IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RICK D. HANSEN and CONNIE B. HANSEN, individual citizens of Utah,<br><br><div align="center">Plaintiffs,</div><br>v.<br><br>JPMORGAN CHASE BANK, NA, CHASE BANK, JPMORGAN, JPMORGAN CHASE & CO., CENLAR, FSB, EQUIFAX, INC., EXPERIAN INFORMATION SOLUTIONS, INC., INNOVIS DATA SOLUTIONS, INC., TRANSUNION, LLC, and JOHN DOES 1 - 25,<br><br><div align="center">Defendants.</div> | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT TRANSUNION, LLC'S MOTION TO DISMISS**<br><br><br>Case No. 2:16-CV-744-DN<br><br>District Judge David Nuffer |

This case involves claims for damages arising from alleged incomplete or inaccurate reporting of a government taking of real property owned by Plaintiffs Rick D. Hansen and Connie B. Hansen (the "Hansens") which had negative effects on the Hanses' credit rating.[1] The Hansens assert two claims against Defendant TransUnion, LLC ("TransUnion"): violation of the Fair and Accurate Transactions Act of 2003 ("FACTA");[2] and violations of the Consumer Credit Reporting Reform Act of 1996 ("CCRRA").[3] TransUnion seeks dismissal of the Hansens' claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief may be granted.[4]

---

[1] Complaint, docket no. 2, filed June 29, 2016.

[2] *Id*. ¶¶ 113-19.

[3] *Id*. ¶¶ 120-26.

[4] Defendant TransUnion LLC's Motion to Dismiss Under Rule 12(b)(6) for Failure to State a Claim ("Motion to Dismiss"), docket no. 26, filed Aug. 9, 2016.

Because the Hansens' Complaint[5] fails to allege sufficient facts to support its claims against TransUnion, TransUnion's Motion to Dismiss[6] is GRANTED.

## Contents

BACKGROUND ............................................................................................................. 2
DISCUSSION ............................................................................................................... 5
    The Hansens' Complaint fails to satisfy the basic pleading requirements of the federal rules to state a claim against TransUnion .................................................................. 6
        The Hansens' Complaint fails to state a claim for violation of the FACTA against TransUnion ................................................................................................ 7
        The Hansens' Complaint fails to state a claim for violations of the CCRRA against TransUnion ................................................................................................ 9
        The argument and new theory of TransUnion's liability in the Hansens' Response to TransUnion's Motion to Dismiss do not save their claims from dismissal .......... 12
ORDER ....................................................................................................................... 15

## BACKGROUND

The Hansens were owners of certain real property in Spanish Fork, Utah (the "Property") where they had lived and Mr. Hansen conducted a cement curbing business for more than two decades.[7] On December 20, 2013, the Hansens transferred ownership of the Property to the cities of Spanish Fork and Springville as a result of an eminent domain taking for the expansion of the Spanish Fork/Springville Municipal Airport.[8] The Hansens were paid the Property's fair market value for the taking.[9] However, the payment was insufficient to cover the existing debt owed on the Property.[10]

---

[5] Docket no. 2, filed June 29, 2016.

[6] Docket no. 26, filed Aug. 9, 2016.

[7] Complaint at 2, 7, docket no. 2, filed June 29, 2016.

[8] *Id*. at 2-3, ¶¶ 35-36, 53-54.

[9] *Id*. at 3.

[10] *Id*.

Prior to the taking, by letters dated July 22, 2013, the Hansens notified the Property's lien holders, Chase Bank and CENLAR, FSB ("CENLAR"), of the government's intent to exercise eminent domain on the Property.[11] This spurred a series of communications over a period of several months between the Hansens and Chase Bank and CENLAR regarding the debts owed on the Property.[12] Despite being repeatedly informed that the transaction was a government taking, Chase Bank and CENLAR treated the Hansens' notice as a request for a short sale.[13] A "short sale" is a sale for less than value, which is treated in the industry as a foreclosure.[14]

The taking resulted in Chase Bank and CENLAR settling the debts for an amount that was less than full payment.[15] When the Hansens later attempted to obtain a replacement property, they discovered that their credit rating had dropped as a result of information Chase Bank and CENLAR furnished to the major credit reporting agencies concerning the debts.[16] Chase Bank and CENLAR had furnished information that the Hansens were delinquent in their payments on the debts from October 2013 through December 2013, and that the Property was sold for less than value.[17]

Beginning on January 8, 2014, the Hansens sent letters to Chase Bank and CENLAR demanding that the information furnished to the major credit reporting agencies be corrected to reflect a government taking.[18] In response, CENLAR issued letters recanting use of the term

---

[11] *Id*. ¶ 4.

[12] *Id*. ¶¶ 5-64.

[13] *Id*.

[14] *Id*. at 5-6.

[15] *Id*. at 5, ¶¶ 20, 24, 41, 47, 50-51.

[16] *Id*. at 6.

[17] *Id*. at 5-6.

[18] *Id*. at 7, ¶¶ 65, 68, 72.

"short sale," and acknowledging that the transaction was a government taking and that the debt was "paid in full."[19] CENLAR's letters were publicly noticed and shared with the major credit reporting agencies.[20] However, CENLAR later furnished information to the major credit reporting agencies that the debt was "settled for less than the full amount … due to eminent domain of the [Property]."[21]

Chase Bank initially responded to the Hansens' demands by indicating that it "sent an electronic notification to the major credit agencies (Equifax, Experian, Innovis and TransUnion) requesting that they suppress the delinquent payments reporting on [the Hansens'] account for October 2013, November 2013, and December 2013."[22] Chase Bank also notified the Hansens that it asked the "four major credit agencies (Equifax, Experian, Innovis and TransUnion) to show that [the Hansens had] paid off (or settled) the account for less than the full balance as of December 27, 2013."[23] However, Chase Bank later informed that Hansens that it "requested that the credit reporting agencies report the loan as paid in full for less than the full balance – settled. The credit bureaus do not report the narrative 'Short Sale.'"[24] Chase Bank continues to characterize the debt as settled for "less than the full balance," without reference to a government taking or the exercise of eminent domain.[25]

---

[19] *Id*. at 7, ¶¶ 70, 76.

[20] *Id*.

[21] *Id*. ¶¶ 79-80.

[22] *Id*. ¶ 67.

[23] *Id*. ¶ 85.

[24] *Id*. ¶ 88.

[25] *Id*. ¶¶ 92, 94.

Despite the drop in their credit rating, the Hansens purchased a replacement property.[26] However, they received a higher interest rate which increased their monthly mortgage payments by approximately $400.[27] The authorized limits on the Hansens' personal and business credit cards also suffered reductions which impacted the Mr. Hansen's ability to conduct his cement curbing business and secure future contracts.[28]

## DISCUSSION

TransUnion seeks dismissal of the Hansens' claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[29] A defendant is entitled to dismissal under Rule 12(b)(6) when the complaint, standing alone, is legally insufficient to state a claim for which relief may be granted.[30] When considering a motion to dismiss for failure to state a claim, the thrust of all well-pleaded facts in the complaint is presumed, but conclusory allegations need not be considered.[31] Nor are the complaint's legal conclusions and opinions accepted, whether or not they are couched as facts.[32]

The United States Supreme Court has held that satisfying the basic pleading requirements of the federal rules "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."[33] "A pleading that offers labels and conclusions or a formulaic recitation of the

---

[26] *Id*. at 6.

[27] *Id*. at 6-7.

[28] *Id*. at 7.

[29] Motion to Dismiss, docket no. 26, filed Aug. 9, 2016.

[30] *Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

[31] *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009).

[32] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995).

[33] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 862 (2009).

elements of a cause of action will not do."[34] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[35] Moreover, "naked assertions devoid of further factual enhancement" are insufficient to state a claim that will survive a motion to dismiss.[36]

"The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."[37] "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them."[38]

### The Hansens' Complaint fails to satisfy the basic pleading requirements of the federal rules to state a claim against TransUnion

The Hansens' Complaint asserts two claims against TransUnion: violation of the FACTA;[39] and violations of the CCRRA.[40] However, the only factual allegations regarding TransUnion relate to the information Chase Bank and CENLAR furnished to the major credit reporting agencies concerning the debts on the Property.[41] There are no factual allegations regarding TransUnion's conduct or actions relating to the information it was furnished. Indeed, TransUnion is expressly referenced in only three of the Complaint's factual allegations, and these allegations pertain solely to the actions of Chase Bank:

67.    On January 16, 2014 a fax was sent to Plaintiffs' counsel regarding the credit information reported by Chase. The letter concluded by stating that:

---

[34] *Id*. (internal quotations omitted).

[35] *Id.*

[36] *Id.* (internal quotations omitted).

[37] *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

[38] *Id.* at 1248.

[39] Complaint ¶¶ 113-19, docket no. 2, filed June 29, 2016.

[40] *Id*. ¶¶ 120-26.

[41] *Id*. at 5-7, ¶¶ 67, 70, 76, 79-80, 85, 88, 92, 94.

"Chase sent an electronic notification to the major credit agencies (Equifax, Experian, Innovis and TransUnion) requesting that they suppress the delinquent payments reporting on this account for October 2013, November 2013, and December 2013. Our records show we are not reporting any other delinquent payment to the major credit agencies."[42]

85.     On June 27, 2014 Chase sent a notice to Plaintiff through counsel that Chase had asked "four major credit agencies (Equifax, Experian, Innovis and TransUnion) to show that you paid off (or settled) the account for less than the full balance as of December 27, 2013."[43]

97.     Defendant Chase characterized to the credit reporting bureaus, including but not limited to Equifax, Experian, Innovis and TransUnion, that the government taking of the Plaintiffs' real property was "settled for less than full amount" without explanation of the true nature of the government taking, resulting in the deliberate prejudicial type casting of the transaction, not as a government taking to satisfy eminent domain and the public good, which leaves no negative credit implication on the Plaintiffs, but rather to negatively and deliberately lead to the false light conclusion, in credit terms, that it was the equivalent to a foreclosure sale, with the negative effect on the credit rating of the Plaintiffs.[44]

There are no allegations that the Hansens contacted TransUnion regarding the information Chase Bank and CENLAR furnished. There are no allegations regarding what TransUnion did with the information Chase Bank and CENLAR furnished. And there are no allegations that TransUnion was ever aware, or reasonably should have been aware, that the Hansens disputed the completeness or accuracy of the information Chase Bank and CENLAR furnished.

**The Hansens' Complaint fails to state a claim for violation of the FACTA against TransUnion**

In asserting the Hansens' claim for violation of the FACTA against TransUnion, the Complaint includes only generalized, conclusory statements that:

- The FACTA amends the Fair Credit Reporting Act ("FCRA") to improve the accuracy of credit reporting, and Plaintiffs have a right to have their credit

---

[42] *Id.* ¶ 67.

[43] *Id.* ¶ 85.

[44] *Id.* ¶ 97.

7

fairly reported and to make informed credit decisions not influenced by inaccurate reporting;[45] and

- "Defendants" violated the FACTA by deliberately reporting the government taking in a way that adversely affected the Hansens' credit score, after notice and objection was asserted by the Hansens, and after having admitted that reporting the transaction in such a manner was likely to result in a negative credit report.[46]

The Complaint's allegations are insufficient to inform TransUnion of the actual grounds of the Hansens' violation of the FACTA claim. The Complaint does not specify what section of the FACTA or the FCRA that TransUnion violated. Nor does it allege, even upon information and belief, any conduct of TransUnion in relation to the claim. The Complaint does allege that a credit report was generated, which includes the information furnished by Chase Bank and CENLAR and the drop in the Hansens' credit rating.[47] However, there is no allegation that TransUnion prepared this report or any other report containing the information Case Bank and CENLAR furnished.[48] The credit report attached to the Complaint also does not identify who or what entity or agency prepared it.[49] Regardless, even if the Complaint alleged that TransUnion had prepared the credit report, there is no allegation that TransUnion failed to follow reasonable procedures to assure the accuracy of the report,[50] or that the report was ever communicated to a third party.[51]

---

[45] *Id*. ¶¶ 114-15.

[46] *Id*. ¶¶ 116-18.

[47] *Id*. at 6 (citing Exhibit 2, docket no. 3-2, filed June 29, 2016).

[48] 15 U.S.C. § 1681e(b); *see also Eller v. TransUnion, LLC*, 739 F.3d 467, 473-74 (10th Cir. 2002); *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1239-40 (10th Cir. 2015).

[49] Exhibit 2, docket no. 3-2, filed June 29, 2016.

[50] 15 U.S.C. § 1681e(b); *see also Eller*, 739 F.3d at 473; *Wright*, 805 F.3d at 1239-40.

[51] *Eller*, 739 F.3d at 474 (citing 15 U.S.C. § 1681a(d)).

The Hansens' Complaint also contains no allegation that the Hansens, Chase Bank, or CENLAR ever provided TransUnion with notice of the Hansens' dispute regarding the completeness or accuracy of the information Case Bank and CENLAR furnished.[52] The Complaint does allege that Case Bank and CENLAR updated and corrected the information they furnished to the major credit reporting agencies concerning the debts on the Property.[53] However, the documents referenced in support of these allegations do not state that the credit reporting agencies were ever informed that the updates and corrections were in response to a dispute made by the Hansens.[54] And even if the Complaint alleged that TransUnion had prepared a credit report containing the information furnished by Chase Bank and CENLAR, and that TransUnion had notice of the Hansens' dispute, there is no allegation that TransUnion failed to follow reasonable procedures to reinvestigate the disputed information.[55]

Therefore, the Hansens' Complaint[56] fails to state a claim for violation of the FACTA against TransUnion.

**The Hansens' Complaint fails to state a claim for violations of the CCRRA against TransUnion**

In asserting the Hanses' claim for violation of the CCRRA against TransUnion, the Complaint references the obligations the FCRA imposes on furnishers of information to credit reporting agencies under 15 U.S.C. §§ 1681s-2(a) and 1681s-2(b).[57] Section 1681s-2(a) pertains

---

[52] 15 U.S.C. § 1681i; *see also Wright*, 805 F.3d at 1241-42.

[53] Complaint at 5-7, ¶¶ 67, 70, 76, 79-80, 85, 88, 92, 94, docket no. 2, filed June 29, 2016.

[54] Exhibit 4, docket no. 3-4, filed June 29, 2016; Exhibit 5, docket no. 3-5, filed June 29, 2016; Exhibit 67, docket no. 6-7, filed June 29, 2016; Exhibit 70, docket no. 6-10, filed June 29, 2016; Exhibit 76, docket no. 6-16, filed June 29, 2016; Exhibit 79, docket no. 6-19, filed June 29, 2016; Exhibit 80, docket no. 6-20, filed June 29, 2016; Exhibit 84, docket no. 7-4, filed June 29, 2016; Exhibit 87, docket no. 7-7, filed June 29, 2016; Exhibit 91, docket no. 7-11, filed June 29, 2016; Exhibit 93, docket no. 7-13, filed June 29, 2016.

[55] 15 U.S.C. § 1681i; *Wright*, 805 F.3d at 1241-42.

[56] Docket no. 2, filed June 29, 2016.

[57] *Id*. ¶¶ 121-124.

9

to the duty of furnishers to provide accurate information to credit reporting agencies.[58]

Section 1681s-2(b) pertains the duties of furnishers to comply with certain investigative

procedures after receiving notice from a credit reporting agency that a consumer disputes the

completeness or accuracy of furnished information.[59] The Complaint also includes a generalized,

conclusory statement that:

> 125.    Plaintiffs alleges that none of the [CCRRA's] mandatory [investigative]
> steps were followed and that the information given to the [credit reporting
> agencies] was intended to disrupt the [CCRRA's] procedure to create a
> conclusionary prejudice inclined to trigger a derogatory credit history event that
> even furnishers CENLAR and Chase admittedly knew and warned was a
> likelihood of their actions.[60]

The Complaint's allegations are insufficient to state claim against TransUnion for

violations of the CCRRA. The Tenth Circuit has held that "while [the] FCRA allows federal

agencies and state officials to enforce the[] obligations [of Section 1681s-2(a)], it does not allow

consumers … a private right of action to do so."[61] Therefore, even assuming that the Hansens'

Complaint includes allegations demonstrating that the duties of Section 1681s-2(a) apply to

TransUnion, which it does not, and allegations that TransUnion violated these duties, which it

also does not, any claim that TransUnion violated Section 1681s-2(a) fails as a matter of law.

Additionally, while a private right of action exists for violations of Section 1681s-2(b),[62]

the Tenth Circuit has held that "[t]he furnisher's duty to investigate arises only after a [credit

reporting agency] notifies the furnisher of a dispute and, conversely, does not arise when notice

---

[58] 15 U.S.C. § 1681s-2(a).

[59] *Id*. § 1681s-2(b).

[60] Complaint ¶ 125, docket no. 2, filed June 29, 2016.

[61] *Brunson v. Provident Funding Associates*, 608 Fed. App'x 602, 611 (10th Cir. 2015) (citing *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1147 (10th Cir. 2012)); *see also Pinson v. Equifax Credit Infor. Servs., Inc.*, 316 Fed. App'x 744, 751 (10th Cir. 2009); 15 U.S.C. § 1681s-2(c).

[62] *Sanders*, 689 F.3d at 1147

is provided directly from a consumer."[63] "Thus, a consumer cannot recover under [Section] 1681s-2(b) if they do not initiate the process for recovery by notifying a [credit reporting agency] of the dispute."[64]

The Hansens' Complaint fails to allege sufficient facts, even upon information and belief, to support a claim that TransUnion violated Section 1681s-2(b). There is no allegation that TransUnion ever furnished inaccurate information to a credit reporting agency regarding the Hansens. Indeed, the Complaint alleges that TransUnion is a credit reporting agency, not a furnisher of information to credit reporting agencies.[65] There is also no allegation that the Hansens, as consumers, ever initiated the investigative procedures of Section 1681s-2(b) by providing notice of their dispute to TransUnion or any other credit reporting agency. Rather, the Complaint alleges that the Hansens raised their dispute directly with Chase Bank and CENLAR, and through the office of Senator Orrin Hatch.[66] And there is no allegation that Chase Bank or CENLAR, as furnishers, or any other individual or entity ever provided TransUnion or any other credit reporting agency with notice that the Hansens disputed the furnished information.

The closest the Complaint comes to alleging that the Hansens initiated the investigative procedures of Section 1681s-2(b) is found in following allegation:

> Either the [credit reporting agency] was not provided, with a [consumer dispute verification form], containing sufficient detail to explain that this was a "taking" and not a foreclosure type action, in which case the furnisher of information is to blame for causing the negative credit report, or the furnisher did provide direct information clearly classifying the transaction as a government taking based on eminent domain and the [credit reporting agency] mischaracterized the transaction

---

[63] *Willis v. Capital One Corp.*, 611 Fed. App'x 500, 502 (10th Cir. 2015) (internal quotations omitted); *see also Sanders*, 689 F.3d at 1147; *Pinson*, 316 Fed. App'x at 751.

[64] *Willis*, 611 Fed. App'x at 502 (internal quotations omitted); *see also Sanders*, 689 F.3d at 1147; *Pinson*, 316 Fed. App'x at 751.

[65] Complaint at 5-7, ¶¶ 67, 70, 76, 79-80, 85, 88, 92, 94, docket no. 2, filed June 29, 2016.

[66] *Id.* at 7, ¶¶ 65, 68, 72, 75, 82-83, 86, 89-90, 93, 98-99, 107, 118, 140.

as carrying a negative impact. The results were the same as neither the [credit reporting agency] nor the furnisher satisfy the reasonable obligation test.[67]

However, this allegation is generalized, conclusory, and argumentative. The allegation is also found in a claim for failure to reasonably investigate after multiple contacts that is asserted against Chase Bank and CENLAR, not TransUnion.[68] The allegation does not refer to TransUnion as the relevant credit reporting agency.[69] Nor is the allegation incorporated into the Hansens' violations of the CCRRA claim against TransUnion.[70] Moreover, the allegation acknowledges that the credit reporting agency may not have been provided with a consumer dispute verification form.[71]

Therefore, the Hansens' Complaint fails to state a claim against TransUnion for violating the investigative procedures of Section 1681s02(b). Accordingly, the Complaint[72] fails to state a claim for violations of the CCRRA against TransUnion.

**The argument and new theory of TransUnion's liability in the Hansens' Response to TransUnion's Motion to Dismiss do not save their claims from dismissal**

In an attempt to recast their claims against TransUnion, the Hansens argue that this is a case about TransUnion's due diligence in receiving and publishing a negative credit entry.[73] For the first time, the Hansens cite to 15 U.S.C. § 1681e(b) as the predicate for TransUnion's liability.[74] And for the first time, the Hansens argue that TransUnion negligently or willfully

---

[67] *Id.* at 130.

[68] *Id.* at ¶¶ 127-136.

[69] *Id.* at ¶ 130.

[70] *Id.* at ¶¶ 120-26.

[71] *Id.* at ¶ 130.

[72] Docket no. 2, filed June 29, 2016.

[73] Plaintiff's Response to Defendant TransUnion LLC's Motion to Dismiss Under Rule 12(b)(6) for Failure to State a Claim ("Hansens' Response") at 2, docket no. 36, filed Aug. 23, 2016.

[74] *Id.* at 3.

transmitted credit reports containing the information Chase Bank and CENLAR furnished concerning the debts on the Property.[75]

"Normally a claim or theory that is not adequately raised in the complaint will not be considered."[76] However, the Tenth Circuit has recognized that "it might be appropriate for a court to consider additional facts or legal theories asserted in a response brief to a motion to dismiss if they [are] consistent with the facts and theories advanced in the complaint[.]"[77] "[Tenth Circuit] cases interpret the inclusion of new allegations in a response to a motion [to dismiss], as a potential request to amend the complaint."[78]

Nevertheless, the Hansens have not requested leave to amend their Complaint.[79] And the Hansens' argument and new theory of TransUnion's liability are deficient. To prevail on a claim for violation of Section 1681e(b), the Hansens must establish: (1) TransUnion failed to follow reasonable procedures to assure the accuracy of its reports; (2) the report in question was, in fact, inaccurate; (3) the Hansens suffered injury; and (4) TransUnion's failure caused their injury.[80]

The Hansens still do not allege, even on information and belief, that TransUnion failed to follow reasonable procedures to assure the accuracy of the information furnished by Chase Bank and CENLAR. Nor do they allege that they, Chase Bank, CENLAR, or any other individual or entity ever provided TransUnion with notice that the Hansens' disputed the completeness or accuracy of the furnished information. Rather, the Hansens seek discovery to uncover what

---

[75] *Id*. at 4.

[76] *Fuqua v. Lindsey Mgmt. Co., Inc.*, 321 Fed. App'x 732, 734 (10th Cir. 2009).

[77] *Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001).

[78] *Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003).

[79] Hansens' Response, docket no. 36, filed Aug. 23, 2016.

[80] 15 U.S.C. § 1681e(b); *see also Eller*, 739 F.3d at 473; *Wright*, 805 F.3d at 1239-40.

procedures TransUnion followed and to determine whether or not those procedures were reasonable.[81]

The official Federal Trade Commission commentary on Section 1681e(b) provides:

The section does not require error free consumer reports. If a consumer reporting agency accurately transcribes, stores and communicates consumer information received from a source that it reasonably believes to be reputable, and which is credible on its fact, the agency does not violate this section simply by reporting an item of information that turns out to be inaccurate. However, when a consumer reporting agency learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, for periodic review of its reporting system, or otherwise) it must review its procedures for assuring accuracy. Examples of errors that would require such review are the issuance of a consumer report pertaining entirely to a consumer other than the one on whom a report was requested, and the issuance of a consumer report containing information on two or more consumers (e.g., information that was mixed in the file) in response to a request for a report on only one of those consumers.[82]

Considering this persuasive commentary, and in the absence of allegations that TransUnion failed to follow reasonable procedures, and that TransUnion was ever aware, or reasonably should have been aware, that the information Chase Bank and CENLAR furnished was disputed by the Hansens, the Hansens fail to state a claim against TransUnion for violation of Section 1681e(b).[83] Therefore, the argument and new theory of TransUnion's liability in the Hansens' Response[84] do not save their claims from dismissal.

---

[81] Hansens' Response at 5, docket no. 36, filed Aug. 23, 2016

[82] *Cassara v. DAC Servs., Inc.*, 276 F.3d 1210, 1217 (10th Cir. 2002) (quoting 16 C.F.R. Part 600 App. (2000)).

[83] Docket no. 2, filed June 29, 2016.

[84] Docket no. 36, filed Aug. 23, 2016.

**ORDER**

IT IS HEREBY ORDERED that TransUnion's Motion to Dismiss[85] is GRANTED.

Consequently, the Hansens' third cause of action for violation of the FACTA[86] and fourth cause

of action for violations of the CCRRA[87] against TransUnion are DISMISSED.

Signed March 27, 2017.

BY THE COURT

District Judge David Nuffer

---

[85] Docket no. 26, filed Aug. 9, 2016.

[86] Complaint ¶¶ 113-19, docket no. 2, filed June 29, 2016.

[87] *Id*. ¶¶ 120-26.