IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RICK D. HANSEN and CONNIE B. HANSEN, individual citizens of Utah,<br><br>Plaintiffs,<br><br>v.<br><br>JPMORGAN CHASE BANK, NA, CHASE BANK, JPMORGAN, JPMORGAN CHASE & CO., CENLAR, FSB, EQUIFAX, INC., EXPERIAN INFORMATION SOLUTIONS, INC., INNOVIS DATA SOLUTIONS, INC., TRANSUNION, LLC, and JOHN DOES 1 - 25,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING CENLAR, FSB'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Case No. 2:16-CV-744-DN<br><br>District Judge David Nuffer |

This case involves claims for damages arising from alleged incomplete or inaccurate reporting of a government taking of real property owned by Plaintiffs Rick D. Hansen and Connie B. Hansen (the "Hansens") which had negative effects on the Hansens' credit rating.[1] The Hansens assert six claims against Defendant CENLAR, FSB ("CENLAR"): (1) violations of the Fair Credit Reporting Act ("FCRA");[2] (2) violations of the FCRA;[3] (3) violation of the Fair and Accurate Transactions Act of 2003 ("FACTA");[4] (4) violations of the Consumer Credit Reporting Reform Act of 1996 ("CCRRA");[5] (5) failure to reasonably investigate after multiple

---

[1] Complaint, docket no. 2, filed June 29, 2016.

[2] *Id*. ¶¶ 96-103.

[3] *Id*. ¶¶ 104-112.

[4] *Id*. ¶¶ 113-119.

[5] *Id*. ¶¶ 120-126.

contacts;[6] and (6) defamation of credit.[7] CENLAR seeks judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure arguing that the Hansens' claims fail as a matter of law, are time barred, or are preempted.[8]

Because the Hansens' claims against CENLAR[9] fail as a matter of law and are time barred, CENLAR's Motion[10] is GRANTED.

**Contents**
BACKGROUND ............................................................................................................................ 2
DISCUSSION ................................................................................................................................ 5
    No private right of action exists for alleged violations of Section 1681s-2(a) ......................... 7
    The Hansens' allegations are insufficient to state a claim against CENLAR for violation of
        Section 1681s-2(b) .............................................................................................................. 8
    The Hansens' claim for defamation of credit against CENLAR fails as a matter of law ....... 11
    Alternatively, the Hansens' claims against CENLAR are time barred by the FCRA's statute
        of limitations ..................................................................................................................... 13
ORDER ........................................................................................................................................ 15

## BACKGROUND

The Hansens were owners of certain real property in Spanish Fork, Utah (the "Property") where they had lived and Mr. Hansen conducted a cement curbing business for more than two decades.[11] On December 20, 2013, the Hansens transferred ownership of the Property to the cities of Spanish Fork and Springville as a result of an eminent domain taking for the expansion of the Spanish Fork/Springville Municipal Airport.[12] The Hansens were paid the Property's fair

---

[6] *Id*. ¶¶ 127-136.

[7] *Id*. ¶¶ 137-147.

[8] CENLAR, FSB's Motion for Judgment on the Pleadings ("CENLAR's Motion"), docket no. 52, filed Oct. 5, 2016.

[9] Complaint ¶¶ 96-147, docket no. 2, filed June 29, 2016.

[10] Docket no. 52, filed Oct. 5, 2016.

[11] Complaint at 2, 7, docket no. 2, filed June 29, 2016.

[12] *Id*. at 2-3, ¶¶ 35-36, 53-54.

market value for the taking.[13] However, the payment was insufficient to cover the existing debt owed on the Property.[14]

Prior to the taking, by letters dated July 22, 2013, the Hansens notified the Property's lien holders, Chase Bank and CENLAR, of the government's intent to exercise eminent domain on the Property.[15] This spurred a series of communications over a period of several months between the Hansens and Chase Bank and CENLAR regarding the debts owed on the Property.[16] Despite being repeatedly informed that the transaction was a government taking, Chase Bank and CENLAR treated the Hansens' notice as a request for a short sale.[17] A "short sale" is a sale for less than value, which is treated in the industry as a foreclosure.[18]

The taking resulted in Chase Bank and CENLAR settling the debts for an amount that was less than full payment.[19] When the Hansens later attempted to obtain a replacement property, they discovered that their credit rating had dropped as a result of information Chase Bank and CENLAR furnished to the major credit reporting agencies concerning the debts.[20] Chase Bank and CENLAR had furnished information that the Hansens were delinquent in their payments on the debts from October 2013 through December 2013, and that the Property was sold for less than value.[21]

---

[13] *Id*. at 3.

[14] *Id*.

[15] *Id*. ¶ 4.

[16] *Id*. ¶¶ 5-64.

[17] *Id*.

[18] *Id*. at 5-6.

[19] *Id*. at 5, ¶¶ 20, 24, 41, 47, 50-51.

[20] *Id*. at 6.

[21] *Id*. at 5-6.

Beginning on January 8, 2014, the Hansens sent letters to Chase Bank and CENLAR demanding that the information furnished to the major credit reporting agencies be corrected to reflect a government taking.[22] In response, CENLAR issued letters on January 16, 2014, January 22, 2014, and February 11, 2014, recanting use of the term "short sale," and acknowledging that the transaction was a government taking and that the debt was "paid in full."[23] CENLAR's letters were publicly noticed and shared with the major credit reporting agencies.[24] However, CENLAR later informed the Hansens, by letters dated May 20, 2014, and May 29, 2014, that it had furnished information to the major credit reporting agencies that the debt was "settled for less than the full amount … due to eminent domain of the [Property]."[25]

Chase Bank initially responded to the Hansens' demands by indicating that it "sent an electronic notification to the major credit agencies (Equifax, Experian, Innovis and TransUnion) requesting that they suppress the delinquent payments reporting on [the Hansens'] account for October 2013, November 2013, and December 2013."[26] Chase Bank also notified the Hansens that it asked the "four major credit agencies (Equifax, Experian, Innovis and TransUnion) to show that [the Hansens had] paid off (or settled) the account for less than the full balance as of December 27, 2013."[27] However, Chase Bank later informed that Hansens that it "requested that the credit reporting agencies report the loan as paid in full for less than the full balance – settled. The credit bureaus do not report the narrative 'Short Sale.'"[28] Chase Bank continues to

---

[22] *Id*. at 7, ¶¶ 65, 68, 72.

[23] *Id*. at 7, ¶¶ 70, 76.

[24] *Id*.

[25] *Id*. ¶¶ 79-80.

[26] *Id*. ¶ 67.

[27] *Id*. ¶ 85.

[28] *Id*. ¶ 88.

characterize the debt as settled for "less than the full balance," without reference to a government taking or the exercise of eminent domain.[29]

Despite the drop in their credit rating, the Hansens purchased a replacement property.[30] However, they received a higher interest rate which increased their monthly mortgage payments by approximately $400.[31] The authorized limits on the Hansens' personal and business credit cards also suffered reductions which impacted the Mr. Hansen's ability to conduct his cement curbing business and secure future contracts.[32]

## DISCUSSION

CENLAR seeks judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.[33] A motion for judgment on the pleadings is evaluated by the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim.[34] Under this standard, a defendant is entitled to judgment on the pleadings when the complaint, standing alone, is legally insufficient to state a claim for which relief may be granted.[35] When considering the motion, the thrust of all well-pleaded facts in the complaint is presumed, but conclusory allegations need not be considered.[36] Nor are the complaint's legal conclusions and opinions accepted, whether or not they are couched as facts.[37]

---

[29] *Id*. ¶¶ 92, 94.

[30] *Id*. at 6.

[31] *Id*. at 6-7.

[32] *Id*. at 7.

[33] CENLAR's Motion, docket no. 52, filed Oct. 5, 2016.

[34] *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013).

[35] *Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

[36] *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009).

[37] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995).

The United States Supreme Court has held that satisfying the basic pleading requirements of the federal rules "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."[38] "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."[39] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[40] Moreover, "naked assertions devoid of further factual enhancement" are insufficient to state a claim that will survive a motion for judgment on the pleadings.[41]

"The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."[42] "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them."[43]

The Hansens' Complaint asserts six claims against CENLAR.[44] The predicate for CENLAR's liability on the six claims is alleged violations of 15 U.S.C. §§ 1681s-2(a) and 1681s-2(b). The Hansens generally allege that CENLAR willfully or negligently furnished incomplete or inaccurate information to the major credit reporting agencies concerning the Hansens' debt on the Property.[45] The Hansens also allege that CENLAR willfully or negligently failed to investigate and correct the information it furnished after being repeatedly notified by the

---

[38] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 862 (2009).

[39] *Id*. (internal quotations omitted).

[40] *Id.*

[41] *Id.* (internal quotations omitted).

[42] *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

[43] *Id.* at 1248.

[44] Complaint ¶¶ 96-147, docket no. 2, filed June 29, 2016.

[45] *Id*.

Hansens of their dispute.[46] The Hansens seek damages for CENLAR's alleged willful or negligent noncompliance under 15 U.S.C. §§ 1681n and 1681o.[47]

The Hansens' claims against CENLAR[48] fail as a matter of law and are time barred.

### No private right of action exists for alleged violations of Section 1681s-2(a)

In asserting their claims against CENLAR, the Hansens make repeated reference to and allegations concerning the obligations the FCRA imposes on furnishers of information to credit reporting agencies under 15 U.S.C. § 1681s-2(a).[49] Section 1681s-2(a) pertains to the duty of furnishers to provide accurate information to credit reporting agencies.[50] Among the obligations imposed by Section 1681s-2(a) are:

- a furnisher may not furnish information to a credit reporting agency that it knows or has reasonable cause to believe is inaccurate;[51]

- a furnisher must promptly correct and update the information it furnishes to credit reporting agencies;[52]

- a furnisher may not furnish information to a credit reporting agency without notice that the information is disputed by the consumer;[53]

- a furnisher must provide timely written notice to the consumer when it furnishes negative information to a credit reporting agency;[54] and

---

[46] *Id.*

[47] *Id.* ¶¶ 101-102, 110-111, 135-136, 145-146.

[48] *Id.* ¶¶ 96-147.

[49] *Id.*

[50] 15 U.S.C. § 1681s-2(a).

[51] *Id.* § 1681s-2(a)(1).

[52] *Id.* § 1681s-2(a)(2).

[53] *Id.* § 1681s-2(a)(3).

[54] *Id.* § 1681s-2(a)(7).

- a furnisher must comply with certain investigative procedures concerning the accuracy of the information it furnishes when a consumer raises a dispute directly with the furnisher.[55]

The Tenth Circuit has held that "while [the] FCRA allows federal agencies and state officials to enforce the[] obligations [of Section 1681s-2(a)], it does not allow consumers … a private right of action to do so."[56] Therefore, even assuming the Hansens' allegations demonstrate that the obligations of Section 1681s-2(a) apply to CENLAR, and that CENLAR failed to comply with them, any claim that CENLAR violated Section 1681s-2(a) fails as a matter of law.

Therefore, insofar as the Hansens' claims against CENLAR[57] are predicated on violations of Section 1681s-2(a), the claims fail as a matter of law.

### The Hansens' allegations are insufficient to state a claim against CENLAR for violation of Section 1681s-2(b)

In asserting their claims against CENLAR, the Hansens also make repeated reference to and allegations concerning the duties the FCRA imposes on furnishers of information to credit reporting agencies under 15 U.S.C. § 1681s-2(b).[58] Section 1681s-2(b) pertains the duties of furnishers to comply with certain investigative procedures after receiving notice from a credit reporting agency that a consumer disputes the completeness or accuracy of furnished information.[59] Among the duties imposed by Section 1681s-2(b) are:

---

[55] *Id*. § 1681s-2(a)(8).

[56] *Brunson v. Provident Funding Associates*, 608 Fed. App'x 602, 611 (10th Cir. 2015) (citing *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1147 (10th Cir. 2012)); *see also Pinson v. Equifax Credit Info. Servs., Inc.*, 316 Fed. App'x 744, 751 (10th Cir. 2009); 15 U.S.C. § 1681s-2(c), (d).

[57] Complaint ¶¶ 96-147, docket no. 2, filed June 29, 2016.

[58] *Id*.

[59] 15 U.S.C. § 1681s-2(b).

- a furnisher must timely conduct an investigation with respect to the disputed information;[60]

- a furnisher must review all relevant information provided by a consumer reporting agency;[61]

- a furnisher must report the results of its investigation to the consumer reporting agency that provided the furnisher notice of the consumer's dispute;[62]

- if the investigation reveals that the furnished information was incomplete or inaccurate, a furnisher must report the results to all credit reporting agencies to which the information was furnished;[63] and

- if the information disputed by the consumer is incomplete, inaccurate, or cannot be verified, a furnisher must promptly modify, delete, or permanently block the reporting of the information.[64]

"The investigation an information furnisher undertakes must be a reasonable one."[65]

Unlike Section 1681s-2(a), a private right of action exists against furnishers of information to credit reporting agencies for violations of Section 1681s-2(b).[66] However, the Tenth Circuit has held that "[t]he furnisher's duty to investigate [under Section 1681-2(b)] arises only after a [credit reporting agency] notifies the furnisher of a dispute and, conversely, does not arise when notice is provided directly from a consumer."[67] "Thus, a consumer cannot recover

---

[60] *Id*. § 1681s-2(b)(1)(A), (b)(2).

[61] *Id*. § 1681s-2(b)(1)(B).

[62] *Id*. § 1681s-2(b)(1)(C).

[63] *Id*. § 1681s-2(b)(1)(D).

[64] *Id*. § 1681s-2(b)(1)(E).

[65] *Maiteki v. Marten Transp. Ltd.*, 828 F.3d 1272, 1275 (10th Cir. 2016) (internal quotations omitted).

[66] *Sanders*, 689 F.3d at 1147.

[67] *Willis v. Capital One Corp.*, 611 Fed. App'x 500, 502 (10th Cir. 2015) (internal quotations omitted); *see also Sanders*, 689 F.3d at 1147; *Pinson*, 316 Fed. App'x at 751.

under [Section] 1681s-2(b) if they do not initiate the process for recovery by notifying a [credit reporting agency] of the dispute."[68]

The Hansens fail to allege that they ever initiated the investigative procedures of Section 1681s-2(b) by providing notice to a credit reporting agency of their dispute regarding the completeness or accuracy of the information CENLAR furnished.[69] Rather, the Hansens allege only that they raised their dispute directly with Chase Bank and CENLAR, and through the office of Senator Orrin Hatch.[70]

The closest the Hansens come to alleging that they initiated the investigative procedures of Section 1681s-2(b) is found in following allegation:

> Either the [credit reporting agency] was not provided, with a [consumer dispute verification form], containing sufficient detail to explain that this was a "taking" and not a foreclosure type action, in which case the furnisher of information is to blame for causing the negative credit report, or the furnisher did provide direct information clearly classifying the transaction as a government taking based on eminent domain and the [credit reporting agency] mischaracterized the transaction as carrying a negative impact. The results were the same as neither the [credit reporting agency] nor the furnisher satisfy the reasonable obligation test.[71]

However, this allegation is generalized, conclusory, and argumentative. The allegation is found in the Hansens' claim against Chase Bank and CENLAR for failure to reasonably investigate after multiple contacts.[72] But the allegation does not refer to CENLAR as the relevant furnisher of information.[73] Nor does the allegation identify the relevant credit reporting agency.[74] The

---

[68] *Willis*, 611 Fed. App'x at 502 (internal quotations omitted); *see also Sanders*, 689 F.3d at 1147; *Pinson*, 316 Fed. App'x at 751.

[69] 15 U.S.C. § 1681i; *see also Wright*, 805 F.3d at 1241-42.

[70] Complaint at 7, ¶¶ 65, 68, 72, 75, 82-83, 86, 89-90, 93, 98-99, 107, 118, 140, docket no. 2, filed June 29, 2016.

[71] *Id*. at 130.

[72] *Id*. at ¶¶ 127-136.

[73] *Id*. at ¶ 130.

[74] *Id*.

allegation also acknowledges that the credit reporting agency may not have been provided with a consumer dispute verification form.[75]

Moreover, the Hansens do not allege, even on information and belief, that CENLAR ever received relevant information from a credit reporting agency concerning the Hansens' dispute.[76] "A 'reasonable' investigation [by a furnisher] is one that a reasonably prudent person would undertake under the circumstances."[77] And "[h]ow thorough an investigation must be to be 'reasonable' turns on what relevant information was provided to a furnisher by the [credit reporting agency] giving notice of a dispute."[78]

In the absence of allegations that the Hansens initiated the investigative procedures of Section 1681s-2(b), and that CENLAR received relevant information concerning the Hansens' dispute from a credit reporting agency to guide its investigation, any claim that CENLAR violated Section 1681s-2(b) fails as a matter of law. Therefore, each of the Hansens' claims against CENLAR[79] fail as a matter of law.

### The Hansens' claim for defamation of credit against CENLAR fails as a matter of law

CENLAR seeks dismissal of the Hansens' claim for defamation of credit on the ground that the claim is preempted by the FCRA.[80] This argument is based on the mistaken assumption that the claim is predicated on state common law, and not the provisions of the FRCA.[81]

---

[75] *Id*. at ¶ 130.

[76] 15 U.S.C. § 1681s-2(b).

[77] *Maiteki*, 828 F.3d at 1275 (internal quotations omitted).

[78] *Id*. (internal quotations omitted).

[79] Complaint ¶¶ 96-147, docket no. 2, filed June 29, 2016.

[80] CENLAR's Motion at 2-3, 9-10, docket no. 52, filed Oct. 5, 2016; CENLAR, FSB's Reply in Support of Motion for Judgment on the Pleadings ("CENLAR's Reply") at 3, 7, docket no. 62, filed Nov. 16, 2016.

[81] CENLAR's Motion at 2-3, 9-10, docket no. 52, filed Oct. 5, 2016; CENLAR's Reply at 3, 7, docket no. 62, filed Nov. 16, 2016.

CENLAR's mistaken assumption is understandable because the claim is titled "Defamation of Credit"[82] without reference to the FCRA and its allegations do not expressly refer to the FCRA section CENLAR is alleged to have violated.[83] The claim's allegations[84] also track the elements of a Utah common law claim for defamation:

> A prima facie case for defamation must demonstrate that (1) the defendant published the statements in print or orally; (2) the statements were false; (3) the statements were not subject to privilege; (4) the statements were published with the requisite degree of fault; and (5) the statements resulted in damages.[85]

Specifically, the claim alleges that CENLAR communicated and made public statements that were inaccurate and false concerning the Hansens' debt on the Property.[86] And that these communications and public statements are not subject to privilege, are malicious in nature, and have harmed the Hansens' reputation and caused lost profits to Mr. Hansen's business.[87]

However, the claim's allegations[88] also track the obligations and duties of furnishers of information to credit reporting agencies under the FCRA, specifically Section 1681s-2(a) and Section 1681s-2(b).[89] And the claim asserts the Hansens are entitled to damages for CENLAR's alleged willful or negligent noncompliance with the FCRA under Section 1681n and Section 1681o.[90] Moreover, the Hansens' argument in response to CENLAR's Motion makes

---

[82] Complaint at 38, docket no. 2, filed June 29, 2016.

[83] *Id*. ¶¶ 137-147.

[84] *Id*. ¶¶ 138-144.

[85] *Jacob v. Bezzant*, 2009 UT 37, ¶ 21, 212 P.3d 535 (internal quotations and punctuation omitted).

[86] Complaint ¶¶ 138-141, docket no. 2, filed June 29, 2016.

[87] *Id*. ¶¶ 142-144.

[88] *Id*. ¶¶ 138-144.

[89] *Supra* at 7-10.

[90] Complaint ¶¶ 145-146, docket no. 2, filed June 29, 2016.

clear that the claim is predicated on the existence of a private right of action against furnishers of information to credit reporting agencies under Section 1681s-2(b), not Utah common law.[91]

Therefore, because the Hansens' defamation of credit claim[92] is an FCRA claim predicated on Section 1681s-2(b), CENLAR's preemption argument[93] lacks merit.

Nevertheless, because the Hansens fail to allege that they ever initiated the investigative procedures of Section 1681s-2(b), and fail to allege that CENLAR received relevant information concerning the Hansens' dispute from a credit reporting agency to guide its investigation, any claim that CENLAR violated Section 1681s-2(b) fails as a matter of law.[94] Therefore, the Hansens' defamation of credit claim against CENLAR[95] fails as a matter of law.

### Alternatively, the Hansens' claims against CENLAR are time barred by the FCRA's statute of limitations

As an alternative basis for the dismissal of the Hansens' claims against CENLAR, the FCRA provides:

> An action to enforce any liability created under [the FCRA] may be brought … not later than the earlier of--(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs.[96]

---

[91] Response to Defendant CENLAR, FSB's Motion for Judgment on the Pleadings at 3-4, 18-19, docket no. 57, filed Oct. 18, 2016. The Hansens similarly argue that their claim for defamation of credit is predicated on a private right of action under Section 1681s-2(b), and not Utah common law, in their Response to Defendants JPMorgan Chase Bank, N.A.; Chase Bank; JPMorgan; and JPMorgan Chase & Co. Motion to Dismiss at 3, docket no. 56, filed Oct. 18, 2016.

[92] Complaint ¶¶ 137-147, docket no. 2, filed June 29, 2016.

[93] CENLAR's Motion at 2-3, 9-10, docket no. 52, filed Oct. 5, 2016; CENLAR's Reply at 3, 7, docket no. 62, filed Nov. 16, 2016.

[94] *Supra* at 8-11.

[95] Complaint ¶¶ 137-147, docket no. 2, filed June 29, 2016.

[96] 15 U.S.C. § 1681p.

The Hansens first discovered CENLAR's alleged violations of the FCRA on or before January 8, 2014.[97] On that date, the Hansens sent a letter through counsel to CENLAR demanding that the information CENLAR furnished to the major credit reporting agencies be corrected to reflect a government taking of the Property.[98] In response, CENLAR issued letters to the Hansens and their counsel on January 16, 2014, January 22, 2014, and February 11, 2014, purporting to correct the information it had furnished to the major credit reporting agencies.[99] However, CENLAR later informed the Hansens, by letters dated May 20, 2014, and May 29, 2014, that it had furnished information to the major credit reporting agencies that the debt was "settled for less than the full amount … due to eminent domain of the [Property]."[100]

Therefore, the latest date on which the Hansens discovered that CENLAR's alleged violations of the FCRA were ongoing was upon their receipt of CENLAR's May 29, 2014 letter.[101] The Hansens did not file their Complaint until June 29, 2016, more than two years later. Under the plain language of the FCRA's limitation of actions,[102] the Hansens claims against CENLAR are time barred because they were not filed within two years after the date the Hansens discovered CENLAR's alleged violations of the FCRA. Therefore, CENLAR is entitled to judgment on the pleadings on each of the Hansens' claims.[103]

---

[97] Complaint at ¶ 65, docket no. 2, filed June 29, 2016.

[98] *Id*.

[99] *Id*. at 7, ¶¶ 70, 76.

[100] *Id*. ¶¶ 79-80.

[101] *Id*. ¶ 80.

[102] 15 U.S.C. § 1681p.

[103] Complaint at ¶¶ 96-147, docket no. 2, filed June 29, 2016

## ORDER

IT IS HEREBY ORDERED that CENLAR's Motion[104] is GRANTED. Consequently, the Hansens' claims against CENLAR[105] are DISMISSED.

Signed March 31, 2017.

BY THE COURT

_____
District Judge David Nuffer

---

[104] Docket no. 52, filed Oct. 5, 2016.

[105] Complaint ¶¶ 96-147, docket no. 2, filed June 29, 2016.